**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No: 1:07-cv-01267 (JR) |
| ) | |
| U.S. NATIONAL ARCHIVES AND ) | |
| RECORDS ADMINISTRATION, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S STATUS REPORT AND PROCESSING SCHEDULE**

Plaintiff's reply dismisses the realities of processing hundreds of FOIA requests in a resource-limited setting and instead seeks to line-jump in front of all other requesters of records at the Clinton Presidential Library ("Library"). On October 2, 2007, defendant submitted a status report and processing schedule representing that it was processing plaintiff's request in two groups. Defendant estimated that it would complete its processing of the approximately 10,000 pages of daily schedule records by the end of January 2008, at which point it would provide notice to the incumbent and former Presidential representatives for their review. Defendant could not, however, provide a date certain for production owing to the Presidential reviews. Defendant also represented that it intended to process the approximately 20,000 pages of telephone log books as that portion of the request arises under the current FOIA queue matrix system, but that it could not provide a date certain by which it would complete processing this portion of the request. Approximately 80 FOIA requests are pending ahead of the telephone log books portion of plaintiff's request, constituting millions of pages of records.

In response to defendant's status report and anticipated processing schedule, plaintiff summarily denies the unchallenged declaration of then-Acting Director Emily Robison – outlining the extraordinary efforts undertaken by the Library and its diligence in processing the unanticipated volume of requests it has received – and relies on an inaccurate reading of the court's decision in <u>American Historical Association v. National Archives and Records Administration</u>, Civ. No. 01-2447, -- F. Supp. 2d --, 2007 WL 2822027 (D.D.C. Oct. 1, 2007) (CKK) ("<u>AHA</u>"), to contend that the processing schedule is unjustified and that any stay for continued processing is unwarranted. Prevailing case law, however, is to the contrary. As established in defendant's status report, the Library has received an unanticipated number of FOIA requests – seeking voluminous records – since opening President Clinton's files to record requests in 2006, and the limited staff available to process the requests has been working diligently to painstakingly review records and implement efficient processes to complete those requests. Under this Circuit's law, such limited resources, unexpected volume of requests and diligent efforts support defendant's processing schedule and constitute the "exceptional circumstances" to justify allowing NARA to proceed with the remainder of this request under its current queue structure.

Nor does <u>AHA</u> affect NARA's internal processing schedule or require a change to the queue structure, as plaintiff suggests. Although plaintiff contends that <u>AHA</u> limits Presidential review to 30 days, and that defendant may therefore produce records responsive to the first portion of plaintiff's request by the end of February 2008, <u>AHA</u> is not so limited. First, AHA did not abrogate an incumbent President's independent right to review records proposed for release. Second, consistent with executive privileges rooted in the Constitution, the court in <u>AHA</u> left intact a former President's right to review records proposed for release – which occurs

2

only after the Library completes processing the records[1] – subject only to the Archivist's <u>discretion</u> to limit the former President's review to at least 30 days in accordance with NARA's regulations at 36 C.F.R. § 1270.46(d).  <u>AHA</u>, 2007 WL 2822027 at *17.  By contending that "defendant can produce responsive records as early as thirty days after notice has been given" to the former President, plaintiff both misunderstands the limited reach of AHA, which has no effect on the incumbent President's independent right to review records, and effectively asks the Court to rule on a matter that is not ripe.  (Pl's Response to Def.'s Status Report and Processing Schedule ("Resp.") at 14.)

     Plaintiff cannot prematurely deprive the Archivist of his discretion to determine an appropriate period of Presidential review – if that discretion is required to be exercised at all after 30-day notice to the former President's representatives – by requesting that this Court rule now that records must be released within 30 days of notification.  At base, plaintiff's opposition to defendant's processing schedule is tantamount to a request for a premature ruling from this Court denying the Archivist the right to exercise his discretion, if required, in processing the Presidential records that are the subject of plaintiff's FOIA request.  Such a ruling on the Archivist's exercise of discretion is not ripe for judicial review and underscores why the processing schedule and queue structure are justified in this case.  <u>See</u> <u>Texas v. United States</u>, 523 U.S. 296, 299 (1998) ("[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").

     Even if plaintiff's request for a ruling on the propriety of any discretionary decision was ripe, denying defendant's processing schedule (and therefore completely denying the Archivist

---

[1] As shown in defendant's Status Report and Processing Schedule and below, the second portion of plaintiff's request cannot be processed and sent for Presidential review until the previously

the discretion to determine the appropriate length of review for the former President) would implicate serious constitutional concerns. As the Supreme Court has recognized, Presidential records statutes must provide processes "adequate to preserve executive confidentiality," Nixon v. Administrator of General Serv., 433 U.S. 425, 450 (1977), which are derived from "the supremacy of each branch within its own assigned area of constitutional duties." United States v. Nixon, 418 U.S. 683, 705-06 (1974). By staking its position that defendant's processing schedule is unjustified and that the current queue structure is unwarranted at all, plaintiff effectively would eliminate the Archivist's oversight to ensure that processes "adequate to preserve executive confidentiality" are in place.

The National Archives and Records Administration and the Library take seriously Congress's directive to make Presidential "records available to the public as rapidly and completely as possible" and have been labouring in satisfaction of Congress's instructions to release records in response to the hundreds of FOIA requests currently pending. 44 U.S.C. § 2203(f)(1). But resources are not unlimited, and the number of incoming requests has not abated. Nonetheless, within those constraints, the Library has been "treating each request on a first-in, first-out basis," which, along with multi-track processing, has been deemed a "fair, orderly, and the most efficient procedure," Open America v. Watergate Special Prosecution Force, 547 F.2d 605, 614 (D.C. Cir. 1976), and "adopted by the D.C. Circuit as [a] sufficient showing of due diligence." See Electronic Frontier Foundation v. Dep't of Justice, Civ. No. 06-1708, -- F. Supp. 2d --, 2007 WL 1334973, *6 (D.D.C. May 7, 2007). Nothing more is required to justify the processing schedule. For that reason, those set forth in defendant's status report

---

pending FOIA requests are first processed.

and those following below, the Court should support the processing schedule and leave in place the queue structure for the remainder of plaintiff's request.

I.      **The Clinton Presidential Library Has Been Burdened With An Unanticipated Number of FOIA Requests**

Plaintiff contends that "[d]efendant has not demonstrated that the volume of requests it has received is 'vastly in excess' of anything contemplated by Congress or that this volume is anything more than a predictable agency load." (Resp. at 7.) Plaintiff presses that "[i]t simply is not credible for Defendant to assert that it has been 'burdened' with an 'unprecedented' number of FOIA requests" because defendant "should have known that the number of requests for records would likely exceed by a substantial margin the number of requests received by the libraries of President Clinton's predecessors." (Id. at 8.)

It is well-settled law, however, that in "considering a request for an Open America stay, '[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims[.]'" Electronic Frontier Found., 2007 WL 1334973 at *4 (internal citation omitted). Thus, plaintiff's stated incredulity alone cannot counter the unrebutted testimony of then-Acting Director Emily Robison that "in the first year of FOIA processing since January 2006, the Library has experienced an unexpected jump in the volume and complexity of the incoming FOIA requests themselves." (Supp. Decl. ¶ 29.) As she explained, "[i]n contrast to what transpired at the Reagan and Bush Presidential libraries," the Clinton Presidential Library received a three-fold increase in the number of FOIA requests received in the first calendar year of FOIA processing. (Id.) In the first three months alone, the 211 FOIA requests

submitted were estimated to total over 5,260,000 pages of records.[2]  (Id. ¶ 12.)  As the Supervisory Archivist relayed to plaintiff in 2006, the Library was required to process "more than 2,000,000 pages of records" before plaintiff's "FOIA request [would] reach[] the front of the queue."  (See Robison Decl., Ex. 5 (submitted in support of Defendant's Opp'n to Pl's Mot. for Preliminary Inj.).)  Each of those 2,000,000 pages would be reviewed page-by-page, line-by-line to ensure compliance with the terms of the PRA and redactions of any exempt information.  (Supp. Decl. ¶¶ 7, 9.)

Also, unlike the experiences of the staff at the other libraries, the Clinton Presidential Library received particularly complex requests seeking voluminous records, which have not, unlike past precedent, been substantially narrowed by the requestors themselves.  (Id. ¶ 29.)  The Library is the first Presidential Library "to have a significant volume of born-electronic records," and received in the first 20 months of processing FOIA requests, requests for more than one million emails.  (Id. ¶ 28.)  Although the Library has expended efforts to streamline the process for searching for and reviewing those electronic records, it has been required also to engage in the unanticipated process of "de-hexification," which has required substantial staff time.  (Id.)

The volume and complexity of FOIA requests is compounded by the volume of holdings and variety of formats of media controlled by the Library.  Although plaintiff contends that "the sheer total volume of records held by the Clinton Library does not constitute an exceptional circumstance under FOIA" (Resp. at 8), the sheer volume does explain why each FOIA request demands more time of the limited staff.  See, e.g., Center for Public Integrity v. United States Dep't of State, No. 05-2313, 2006 WL 1073066, * 3-4 (D.D.C. Apr. 24, 2006) (JDB) (noting that

---

[2] The reference in ¶ 12 of the Supplemental Declaration to "an estimated 5,260,372 records" was meant to refer to pages of textual records, as well as emails, photographs, and other audio-visual

demands of complex, time-sensitive, and time-consuming document requests made, in part, "the demonstration required to justify a stay for 'exceptional circumstances'"); Electronic Frontier Found., 2007 WL 1334973 at *5 (finding staff shortage caused, in part, by time consuming initiatives to streamline FOIA processing with the development of the "Sentinel Project" and a "Central Records Complex" adequate to constitute exceptional circumstances because the initiatives led to a "short-term deficit in FBI FOIA processing resources). Contrary to plaintiff's suggestion, the Library's staff have "coordinate[d], organize[d] and index[ed] the Library's records" between 2001 and 2006. (Resp. at 8.) Nonetheless, the volume of records has demanded "greater efforts to maintain intellectual control over this vast collection of records through traditional hard copy finding aids and electronic indices of various kinds." (Supp. Decl. ¶ 27.)

In effect, the Library went from receiving zero requests for FOIA processing before 2006 to 211 requests in the first three months of processing, seeking an estimated 5,260,372 pages of records, to an estimated 10,500,000 pages of records requested for processing as of October 2007. (Supp. Decl. ¶ 12.) That is certainly a jump in FOIA requests justifying the proposed processing schedule and maintaining the status quo under Open America.

## II.    The Clinton Presidential Library Has Limited Resources, Inadequate to Process the Flood of FOIA Requests Within 20 Days

Citing to a 1977 district court case from the Northern District of Illinois, plaintiff contends that "inadequate staff, insufficient funding or a great number of requests are not within the meaning of 'exceptional circumstances' as that language is used in the statute . . . ." (Resp. at 9.) Of course, as made clear in Open America and as adopted in the Electronic Freedom of

---

materials.

Information Act Amendments of 1996, exceptional circumstances exist, in part, when "the existing resources are inadequate to deal with the volume of" the unanticipated number of requests received by an agency. Open America, 547 F.2d at 616; see also Ctr. for Public Integrity, 2006 WL 1073066 at * 2 (exceptional circumstances exist if an agency's resources are devoted to the declassification of classified material of public interest). Courts in this Circuit have routinely granted Open America stays when agency staffing and resources are inadequate to handle the FOIA requests submitted to the agency. Unequivocally, "staffing shortage[s] facing [an agency] constitute 'exceptional circumstances' under Open America." Electronic Frontier Foundation, 2007 WL 1334973 at *6; see also Appleton v. FDA, 254 F. Supp. 2d 6, 9 (D.D.C. 2003) ("[E]xceptional circumstances include any delays encountered in responding to a request as long as the agencies are making good-faith efforts and exercising due diligence in processing requests on a first-in, first out basis."); Kuffel v. BOP, 882 F. Supp. 1116, 1127 (D.D.C. 1995) (same); Lisee v. CIA, 714 F. Supp. 988, 989 (D.D.C. 1990) (same).

      The Supplemental Declaration of Ms. Robison is accorded a presumption of good faith and establishes that there are presently no more than six archivists to process the over 10 million pages currently called for in pending FOIA requests. (Supp. Decl. ¶ 24.) Those six individuals review records "page-by-page, line-by-line . . . to ensure that all exempt information is properly identified and redacted," but also engages in the "time-consuming tasks of searching for, arranging, describing, and performing basic preservation on the responsive records." (Id.) Those individuals are also involved in the unanticipated tasks of de-hexifying electronic records, and of systematically processing entire files (rather than individual folders). (Id. at ¶¶ 28, 31.) Based on the number of currently pending requests alone – putting aside the continuing submission of additional requests – it is not difficult to conclude that the staffing is inadequate to

deal with the volume and complexity of submitted requests. Of course, in response to the staffing shortage, the "Office of Presidential Libraries has submitted to the Archivist of the United States a budget request for Fiscal Year 2009 that includes funding for 15 new archivists for processing Presidential records," the largest number of whom would be dedicated to processing Clinton Presidential Library requests. (Supp. Decl. ¶ 30.)

The Library is working diligently, expeditiously and in good faith given the resource constraints. For that reason, exceptional circumstances exist to justify the proposed processing schedule and to maintain the current queue structure.

### III. The Clinton Presidential Library Is Exercising Due Diligence in Processing FOIA Requests and Has Shown Reasonable Progress in Reducing its Backlog

Plaintiff argues that the Library is "falling further behind as its backlog is increasing," pointing to the increase in the number of pending requests. (Resp. at 9.) That increase, however, is not a function of a lack of diligence by the Library, but a function of the unanticipated number and complexity of the FOIA requests actually received. As this court noted last year,

> To the extent that an agency is unable to reduce its backlog due to an unpredictable increase in the number of FOIA requests, the 1996 amendments do not disqualify an agency from an Open America stay of proceedings. This is because the amendments link the requirement to demonstrate 'reasonable progress' to those cases where an agency claims exceptional circumstances based on '<u>predictable</u> agency workload.' The legislative history contemplates that where an agency faces an 'unforeseen' increase in FOIA requests and the request for a stay is not based on a 'routine backlog,' a stay may be justified notwithstanding the lack of a reduction of the backlog.

<u>Ctr. for Public Integrity</u>, 2006 WL 1073066 at *4 (emphasis in original). In short, the number of FOIA requests received by the Library has not remained constant, and the short-staffed library has been laboring to process the pending – and continuing influx of – requests. Pointing to a snapshot statistic showing an increase in the number of requests does not undermine the

Library's reasonable progress in reducing the "backlog" of requests.

Nor may plaintiff dismiss the Library's systematic efforts to exercise due diligence in processing all pending requests. See, e.g., Electronic Frontier Foundation, 2007 WL 1334973 at *7 ("The Court finds no grounds upon which to reject the factual assertions set forth in [the agency's] declaration, which sufficiently establishes that the [agency] has exercised due diligence on both a systemic level and with respect to EFF's FOIA request.") (emphasis added). Plaintiff argues that the Library's efforts do not demonstrate due diligence with regard to "Plaintiff's request," but instead "only demonstrates how the Library might treat future FOIA requests with due diligence." (Resp. at 10.)

Of course, based on the first-in, first-out matrix system used by the Library to process requests, systematic efforts benefit plaintiff by getting plaintiff closer to the front of its queue. (Supp. Decl. ¶ 20.) "[T]reating each request on a first-in, first-out basis," along with multi-track processing, has been deemed a "fair, orderly, and the most efficient procedure," Open America, 547 F.2d at 614, and "adopted by the D.C. Circuit as [a] sufficient showing of due diligence." See Electronic Frontier Foundation, 2007 WL 1334973 at *6. In addition, the Library has afforded plaintiff benefits through the multi-request queue, which will result in completed processing of the 10,000 pages of daily schedules by the end of January 2008. Significantly, plaintiff "does not object" to that projected date. (Resp. at 3.)

By denigrating the Library's systematic efforts to process first-in FOIA requests, plaintiff effectively asks this Court to sanction line jumping. But as this Circuit has held, queue-jumping by filing a lawsuit "would ultimately profit no one" because it would serve to increase the number of FOIA court proceedings and create an "invidious and unintended distinction" between

plaintiffs who could afford to litigate their FOIA requests and other plaintiffs who "would not have the financial resources to hire a lawyer and go to court." Open America, 547 F.2d at 615.

The Library is still in its relative infancy in processing FOIA requests and refining its processing methods to release records rapidly to the public. Unfortunately, because there is no prior history upon which to estimate progress, given the volume of records in the FOIA queues and the uncertainty about receiving funding for additional requested resources, NARA cannot provide a date certain by which it will complete processing the telephone log portion of plaintiff's request. However, by adding multi-request queues, engaging in systematic processing of entire files (rather than individual folders), requesting additional staffing, traveling to other Libraries to gain institutional knowledge, and engaging in the exacting review of the requested records, the Library has demonstrated the due diligence adequate to justify its processing schedule and its queue structure. See Electronic Frontier Foundation, 2007 WL 1334973 at *6 (finding requests for additional funding for the creation of new FOIA positions and moving to a paperless processing system to constitute due diligence necessary to justify a stay). NARA may provide this Court a status report beginning March 15, 2008, as necessary to inform the Court of the Library's progress in processing plaintiff's request.

**IV.     The Clinton Presidential Library Must Give Due Accord to Executive Privileges Rooted in the Constitution**

Plaintiff relies on an overly restrictive reading of AHA to argue that defendant's processing schedule and an Open America stay are not permitted. The notice process to the former and incumbent Presidents, of course, comes only after the much lengthier FOIA queue and archival review processes that occur at the Library. Once the Library completes its review, in accordance with the PRA, NARA's regulations at 36 C.F.R. § 1270.46, and Executive

11

Order 13233, NARA must give notice to both the former and incumbent Presidents prior to disclosing any Presidential records in order to provide them an opportunity to review the records for any constitutionally-based privileges that might apply.

AHA did not, as plaintiffs suggest, require the Archivist automatically to release all records 30 days after notifying the former President of potential records release.  Instead, the court held simply that the Archivist must "make reasoned, discretionary decisions with respect to the appropriate length of review" after providing at least 30-days notice to the former President. 2007 WL 2822027 at *16.  Because § 3(b) of Executive Order 13233 permitted the former President 90 days to review any records, with potentially unlimited extensions, the court in AHA found that the Archivist acted arbitrarily and capriciously in failing to exercise his discretion to determine if additional time was warranted beyond the minimum of 30 days, as NARA's regulations established.  Id.; see also 36 C.F.R. § 1270.46(d) ("The Archivist shall not disclose any records covered by any notice . . . for at least 30 calendar days from receipt of the notice by the former President, unless a shorter period is required by a demand for Presidential records[.]").  "[T]he Court [did] not find any support for the proposition that removing discretion from the Archivist with respect to what constitutes a reasonable time for said review after 30 days has expired would somehow threaten a former president's ability to make privilege determinations."  AHA at *18 (emphasis added).  The court made clear, however, that the Archivist would maintain discretion to determine whether additional time could be afforded a former President to complete any privilege review.

Significantly, the court did not find that the Archivist's reliance on any other provision of Executive Order 13233 – providing an unlimited time for incumbent Presidential review, for example – would violate the APA. Id. at *11.  Accordingly, the provisions of the Executive

Order permitting incumbent Presidential review with no time limits – consistent with constitutional executive privileges – are fully operative. Thus, even after the former President's review has ended, whether at his own or the Archivist's discretion, the Archivist cannot release records to a requestor until the incumbent President has agreed to authorize such access. See Executive Order 13233, § 3(d).

Yet, notwithstanding the incumbent's right to independent review and the discretion afforded the Archivist to determine the length of the former President's review, plaintiff contends in its response that the processing schedule is unjustified and that no stay is permissible for its pending FOIA request. In effect, therefore, plaintiff seeks a ruling on whether the Archivist may appropriately exercise his discretion to afford additional time for executive privilege review – if requested by the former President at all. Such a challenge is not ripe for adjudication because "it rests upon contingent future events that may not occur as anticipated or indeed may not occur at all." AHA, 2007 WL 2822027 at * 11. The Archivist may be requested to afford additional time, or he may not. As the court in AHA explained in similar circumstances, "[i]t is not certain or even likely that privilege shall be asserted by a former president or his representatives or by a former vice president with respect to any of Plaintiffs' pending document requests such that Plaintiffs' challenge to the assertion provisions of [Executive Order 13233] are purely speculative and not ripe at this time." Id. Only after the Archivist provides notice to the former President and at least 30 days pass may there be concrete facts upon which to determine whether additional time is appropriately granted for additional review. For that reason alone, the processing schedule is justified, as is the Library's current queue structure.

Even if plaintiff had a pending request for a ruling on the propriety of any discretionary decision, and it was ripe, rejecting defendant's processing schedule, requiring release upon expiration of the 30-day notification period to Presidential representatives and therefore completely denying the Archivist the discretion to determine the appropriate length of review for the former President, would implicate serious constitutional concerns. The executive privilege is "fundamental to the operation of the Government and inextricably rooted in the separation of powers under the Constitution." Nixon, 418 U.S. at 708. As the Supreme Court recognizes, the "President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately. These are the considerations justifying a presumptive privilege for Presidential communications."[3] Id. Recognizing the importance of the privilege, the Supreme Court considered significant, in upholding the Presidential Recordings and Materials Preservation Act, "regulations which allowed claims of privilege to be raised before public access occurred." In re Sealed Case, 121 F.3d at 744 (describing Nixon v. Administrator of General Serv., 433 U.S. at 450). Presidential records statutes, the Court recognized, must provide processes "adequate to preserve executive confidentiality." Administrator of General Serv., 433 U.S. at 450.

Rejecting defendant's processing schedule and upending the current queue structure now, as plaintiff requests, is to deny the Archivist the discretion to determine whether additional time is required to "preserve executive confidentiality." Id. Because it is unknown whether and how much additional time would be requested by any Presidential representative for either portion of

---

[3] The Presidential communications privilege extends to "communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the

plaintiff's request, it is imperative that the Court allow the current process to continue, and to allow any subsequent issues to be determined later, if necessary, in a concrete setting. See AHA, 2007 WL 2822027 at *11 ("Under our case law, the primary focus of the ripeness doctrine is to balance the petitioners' interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subject to review and the court's interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting.").

As stated in the status report, defendant will file a status report, if ordered by the Court beginning on March 15, 2008, to keep the Court informed about progress on plaintiff's FOIA request. Because defendant has established "exceptional circumstances," and in particular because of the unique considerations that inhere in disclosure of Presidential records – requiring the Archivist to ensure effective procedures for maintaining executive privilege – the Court should support defendant's proposed processing, as well as its continued first-in, first-out matrix processing of plaintiff's request.

---

President on the particular matter to which the communications relate." In re Sealed Case, 121 F.3d 729, 752 (D.C. Cir. 1997).

**CONCLUSION**

For the foregoing reasons, the processing schedule should be adopted by the Court.

Dated: December 3, 2007                   Respectfully submitted,

                                          JEFFREY S. BUCHOLTZ
                                          Acting Assistant Attorney General

                                          JEFFREY A. TAYLOR
                                          United States Attorney

                                          ELIZABETH J. SHAPIRO
                                          Assistant Branch Director


OF COUNSEL                                 */s/ Helen H. Hong*_____
JASON R. BARON (DC Bar No. 366663)         HELEN H. HONG (CA SBN 235635)
Director of Litigation                     Trial Attorney
Office of the General Counsel              U.S. Department of Justice, Civil Division
NARA                                       P.O. Box 883, 20 Massachusetts Ave., NW
8601 Adelphi Road, Suite 3110              Washington, D.C. 20044
College Park, MD 20740                     Telephone: (202) 514-5838
Telephone: (301) 837-1499                  Fax: (202) 616-8460
Fax: (301) 837-0293                        helen.hong@usdoj.gov
jason.baron@nara.gov                       Counsel for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2007, a true and correct copy of the foregoing Defendant's Reply to Plaintiff's Response to Defendant's Status Report and Processing Schedule was served electronically by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the document is available on the ECF system.

*/s/ Helen H. Hong*_____
HELEN H. HONG
