IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
JUDICIAL WATCH, INC.,                               )
                                                    )
                          Plaintiff,                )
                                                    )    Civil Action No. 1:07-cv-01267 (JR)
              v.                                     )
                                                    )
NATIONAL ARCHIVES AND                               )
RECORDS ADMINISTRATION,                             )
                                                    )
                          Defendant.                )
_____)

## DEFENDANT'S REPLY IN SUPPORT OF A STAY OF THE PROCEEDINGS

## INTRODUCTION

Plaintiff summarily dismisses the realities of processing hundreds of FOIA requests in a resource-limited setting and instead seeks to line-jump in front of all other requesters of records at the Clinton Presidential Library ("Library").  Indeed, although the Library has processed and released over 11,000 pages of records responsive to the daily schedules portion of plaintiff's request, see Ex. 1, plaintiff contends that the Library has failed to exercise due diligence and that a stay is therefore not justified for the remaining telephone log books portion of plaintiff's FOIA request.  But the Library established that it has exercised and will continue to exercise considered diligence in processing the hundreds of FOIA requests that have been submitted.  Through its declarations and in the opening brief, the Library established that its resources are not unlimited, and that the influx of FOIA requests continues.  Put simply, the Library established that exceptional circumstances justify a stay.

Defendant provided detailed declarations by Emily Robison, Deputy Director of the Clinton Presidential Library.  Those declarations explained how FOIA requests are processed at the Library, described the Library's queue system, and represented that the Library would not be able to begin processing the telephone log books portion of plaintiff's FOIA request for one to two years.  Using specific examples and objective measures rooted in case law, the declarations further explained how the Library has received an unprecedented number of FOIA requests, has

inadequate resources to be able to process the remainder of plaintiff's FOIA request within FOIA's general timetable, has been exercising due diligence, and has shown reasonable progress in reducing its backlog. The specific circumstances described in the declarations justify granting a stay of the proceedings.

In response, plaintiff simply denies the existence of exceptional circumstances, asserting that the three-fold increase in FOIA requests at the Clinton Library as compared to other PRA libraries should have been expected because, in its view, there are many reasons why requesters would be interested in the same records in which it is interested. Plaintiff similarly contends that defendant's lack of due diligence is evident by the mere fact that plaintiff's request has not yet been processed while defendant has processed what plaintiff deems to be "frivolous" FOIA requests by others. And, although plaintiff's position in the Library's queue system has continued to move up steadily since it filed its request, plaintiff asserts that the Library's queue structure somehow does not support a due diligence finding because the Library uses a multi-track queue system for more efficient processing. This is so even though plaintiff has undeniably benefitted from the queue structure used by the Library to process FOIA requests. Plaintiff's arguments are simply not supported by the facts or the prevailing case law, and accordingly, plaintiff has failed to refute that a stay of proceedings is necessary and warranted in this case.

For the reasons set forth in defendant's opening motion and below, the Court should grant a stay of the proceedings to allow the Library to process the requested records as they arise in its queue system.

## **ARGUMENT**

Defendant has established that a stay is warranted under 5 U.S.C. § 552(a)(6)(C), and Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976) and its progeny. Plaintiff's opposition summarily denies the realities of processing hundreds of complex FOIA requests in a resource-limited setting, and instead seeks to line-jump in front of other requesters. Naturally, every requester believes that its request is the most important and

should be given the greatest attention.  While this view may be an understandable one for a requester, it cannot be countenanced by the Court.  Indeed, plaintiff's position actually underscores why stays for processing are particularly important in cases like this, where the Library has been diligent in responding to exceptional circumstances, and court imposed line-jumping would mean that those requesters with the resources to litigate could overcome the rights of others.

### A.    Defendant has Established that the Library has Received an Unanticipated Number of FOIA Requests

Plaintiff contends that "Defendant has not demonstrated that the volume of requests it has received is 'vastly in excess' of anything contemplated by Congress or that this volume is anything more than a predictable agency load."  Pls. Opp. 9.  Plaintiff offers no authority, however, to discount the objective measure that supports the Library's position, *i.e.*, the experiences of the other, most recent Presidential Libraries.  As Deputy Director Robison stated, "[i]n the first year of FOIA processing alone, the Library experienced an unexpected jump in the volume and complexity of the incoming FOIA requests themselves compared to the first year at other Libraries."  Supp. Decl. ¶ 29. "In contrast to what transpired at the Reagan and Bush Presidential libraries," the Clinton Presidential Library experienced a <u>three-fold</u> increase in the number of FOIA requests received in the first calendar year of FOIA processing."  <u>Id.</u> (emphasis added).  Also, unlike the experiences of the staff at the other libraries, the Clinton Presidential Library received particularly complex requests seeking voluminous records, which have not, unlike past precedent, been substantially narrowed by the requesters themselves.  <u>Id.</u>

It is well-settled law that in "considering a request for an <u>Open America</u> stay, '[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims[.]'"  <u>Elec. Frontier Found. v. U.S. Dep't of Justice</u>, 517 F. Supp.2d 111, 117 (D.D.C. 2007).  While plaintiff notes reasons why it believes President Clinton's records would be in demand, pressing that "Defendant should have known that the number of requests for records would likely exceed by a substantial margin the number of requests received by the libraries of President Clinton's predecessors," Pls. Opp'n at 9-10, similar arguments could be

made with respect to every Presidency by requesters who deem those particular issues important.[1] Thus, Plaintiff's stated incredulity alone cannot counter the unrebutted testimony of Ms. Robison.

In addition to the unanticipated rise in FOIA requests, the Library is the first Presidential Library "to have a significant volume of born-electronic records," and during its first two years of FOIA processing, it has received requests for more than one million emails. Id. ¶ 28. While the Library has expended efforts to streamline the process for searching for and reviewing those electronic records, it has been required also to engage in the unanticipated process of "de-hexification," which has required substantial staff time. Id. The volume and complexity of FOIA requests is compounded by the volume of holdings and variety of formats of media controlled by the Library. Although plaintiff contends that the total volume of records held by the Clinton Library does not constitute an exceptional circumstance under FOIA, the sheer volume and complexity of Clinton Presidential records does explain why each FOIA request demands more time of the limited staff. See, e.g., Center for Public Integrity v. United States Dep't of State, No. 05-2313, 2006 WL 1073066, * 3-4 (D.D.C. Apr. 24, 2006) (noting that demands of complex, time-sensitive, and time-consuming document requests made, in part, "the demonstration required to justify a stay for 'exceptional circumstances'"); Elect. Frontier Found., 517 F. Supp.2d at 118 (finding staff shortage caused, in part, by time consuming initiatives to streamline FOIA processing with the development of the "Sentinel Project" and a "Central Records Complex" adequate to constitute exceptional circumstances because the initiatives led to a "short-term deficit in FBI FOIA processing resources"). In short, defendant has established that it has received an unanticipated number of FOIA requests which has been further compounded by the complexity of the requests and the large volume of electronic and other records.

---

[1]    For example, the presidencies of Ronald Reagan and George H.W. Bush were marked by any number of notable events, including the Iran Contra Affair, the end of the Cold War, and the First Gulf War.

**B.      Defendant has Established that the Library has Limited Resources, Inadequate to Process the Flood of FOIA Requests Within 20 Days**

The Robison Declarations establish that there are presently no more than six full-time equivalent archivists to process the millions of pages currently called for in pending FOIA requests.  Supp. Decl. ¶ 24.  Those archivists review records "page-by-page, line-by-line . . . to ensure that all exempt information is properly identified and redacted," but also engage in the "time-consuming tasks of searching for, arranging, describing, and performing basic preservation on the responsive records."  Id.

Ignoring the case law of this Circuit, however, plaintiff cites to a 1977 district court case from the Northern District of Illinois, for the proposition that "inadequate staff, insufficient funding or a great number of requests are not within the meaning of 'exceptional circumstances' as that language is used in the statute . . . ." Pls. Opp'n at 10-11.  On the contrary, as was made clear in Open America and as adopted in the Electronic Freedom of Information Act Amendments of 1996, exceptional circumstances exist, in part, when "the existing resources are inadequate to deal with the volume of" the unanticipated number of requests received by an agency.  Open America, 547 F.2d at 616.  Courts in this Circuit have routinely granted Open America stays when agency staffing and resources are inadequate to handle the FOIA requests submitted to the agency.  See, e.g., Elect. Frontier Found., 517 F. Supp.2d at 119 (finding that "staffing shortages facing [FBI's Record/Information Dissemination System] constitutes 'exceptional circumstances' under Open America"); Ctr. for Public Integrity, 2006 WL 1073066 at * 2 (exceptional circumstances exist if an agency's resources are devoted to the declassification of classified material of public interest).

Plaintiff likewise ignores the other important responsibilities of the archivists, including responding to "special access" requests from the incumbent President, Congress, and federal courts under 44 U.S.C. § 2205, which are often time sensitive and require the review of classified information.  Supp. Decl. ¶ 25.  As Ms. Robison explained, archivists also answer reference requests from the public, the Clinton Foundation, the former President, and others.  Id.

Since January 2006, archivists have responded to 3,600 separate reference inquiries.  Archivists also staff the Library's textual and audio-visual research rooms when researchers are present, and the Library's research room has had 432 visits from the public.  Finally, archivists spend time improving the functionality of access to electronic records, as well working on museum exhibit issues, and a variety of other administrative issues as they arise.  Id.  Such other responsibilities of the FOIA processors are routinely considered by the courts in favor of an Open America stay.  See Ctr. for Pub. Integrity, 2006 WL 1073066, at *3; Edmonds v. FBI, 2002 WL 32539613, at *2 (D.D.C. Dec. 3, 2002).  Based on the number of currently pending requests alone – putting aside the continuing submission of additional requests – it is not difficult to conclude that the staffing is inadequate to deal with the volume and complexity of submitted requests.

     **C.**    **Defendant has Established that the Library has Exercised Due Diligence in Processing FOIA Requests**

Despite receiving an unprecedented number of FOIA requests relative to the other Presidential Libraries, it is undeniable that the Library has worked diligently, expeditiously, and in good faith given its resource constraints.  As documented in Ms. Robison's declarations, the Library began, at the outset, by preparing and organizing the millions of pages of records, training its staff, and even releasing one million pages systematically before it began accepting FOIA requests.  Thereafter, as the rise of FOIA requests and backlog became an issue, defendant began undertaking numerous efforts to alleviate the problem, including by revising its queue structure to add a multi-request queue so that the Library could better respond to requesters seeking access to the same or similar files, by conducting an in-house study to review ways of achieving faster processing, by expending significant resources to address the increase of electronic records through the Electronic Records Archives project, and most significantly, by submitting a budget request for 15 new archivists, a large number of whom would be dedicated to reducing the FOIA backlog at the Clinton Presidential Library.  See 2d Supp. Decl. ¶¶ 3-4; Supp. Decl. ¶ 25.  None of these initiatives has been controverted by plaintiff.  Instead, Plaintiff urges that these efforts do not prove due diligence with respect to plaintiff's particular FOIA

request, because it has not completed processing its request.  This argument is flawed on many levels, particularly given that defendant has completed processing records for the daily records schedule portion of plaintiff's request, opening over 11,000 pages of records.

First, plaintiff inappropriately conflates "due diligence" with the timely processing of its own FOIA request.  Plainly, due diligence cannot be described as the timely processing of a plaintiff's FOIA request; otherwise, it would not be a required element of an argument for *additional* time to process a plaintiff's FOIA request.  Due diligence can be shown here by the Library's many systematic efforts in reducing the FOIA backlog, working to achieve faster processing of FOIA requests, as well as requesting additional FOIA resources.  See, e.g., Electronic Frontier Foundation, 517 F. Supp.2d at 120 ("The Court finds no grounds upon which to reject the factual assertions set forth in [the agency's] declaration, which sufficiently establishes that the [agency] has exercised due diligence on both a systemic level and with respect to EFF's FOIA request.") (emphasis added).

Second, the efforts of due diligence of both the processing and reducing the backlog of FOIA requests will, contrary to plaintiff's assertions, work to plaintiff's advantage.  Any steps that speed up the processing of requests that are ahead of plaintiff's request in the Library's queue structure, will mean that the Library will reach plaintiff's request faster.  At the very least, if NARA's budgetary request for additional archivists is funded by Congress, those resources would be particularly useful in the actual processing all requests, including the remaining portion of plaintiff's instant FOIA request.

Third, plaintiff disregards the due diligence with respect to its particular FOIA request. The Library quickly assigned plaintiff's request a FOIA request number, placed it in the multi-request queue once that queue was created, always promptly responded to all inquiries by plaintiff, affirmatively informed plaintiff of responsive documents that had already been made publicly available, and assisted plaintiff in its research visits to the Library.  While plaintiff might not deem such cooperation to be indicia of due diligence, it cannot negate the case law to the contrary.  See Appleton, 254 F. Supp. 2d at 9.  Further, plaintiff's FOIA request has moved

up steadily in the Library's queue structure, as it started out behind 211 requests and, at the time of defendant's motion, was behind merely 30 requests. 2d Supp. Decl. ¶¶ 4, 6.

Plaintiff also claims that the Library has not been acting with due diligence because it has "responded to requests on UFOs" and requests regarding records on "a surprise birthday party for President Clinton."[2] Pls. Opp'n at 13. Plaintiff points to no authority for what seems to be its underlying proposition: that the Library's due diligence should somehow be judged based on the subjective value of the other FOIA requests it has received or processed. The Library has received many other requests, including time-sensitive requests from the incumbent President and the courts, as well as many FOIA requests, including others by plaintiff for the Task Force Records on National Health Care reform totaling over one million pages. See 2d Supp. Decl. ¶ 6. By denigrating the Library's systematic efforts, and pointing to requests which it deems trivial, plaintiff is effectively asking this Court to sanction line jumping. But, as this Circuit has held, queue-jumping by filing a lawsuit "would ultimately profit no one" because it would serve to increase the number of FOIA court proceedings and create an "invidious and unintended distinction" between plaintiffs who could afford to litigate their FOIA requests and other plaintiffs who "would not have the financial resources to hire a lawyer and go to court." Open America, 547 F.2d at 615.

In addition, plaintiff contends that the Library's queue structure does not demonstrate due diligence because it has multiple tracks and is allegedly not a "first-in first-out" system. Plaintiff cannot challenge the queue structure, however, because it has undeniably benefitted from it. Currently, the telephone log books portion remains behind only 30 other FOIA requests constituting approximately 400,000 pages of records. 2d Supp. Decl. ¶ 6. Absent a multi-track queue structure, however, the entirety of plaintiff's request would remain behind 124 other requests, constituting over 3 million pages. Without "injury" to speak of, and indeed benefit,

---

[2]    In any event, as plaintiff's own exhibits show, those requests predated plaintiff's April 5, 2006 request and totaled 27 pages. That the Library processed an earlier-filed, discrete and simple request confirms due diligence on the Library's part, not undercuts it as plaintiff implies.

plaintiff cannot complain about the absence of a single track, first-in, first-out structure.[3]

In any event, plaintiff fundamentally misunderstands the Library's queue structure.  As the Robison Declarations explain, the "Library has established 17 separate access queues, 16 for FOIA requests and one for mandatory review requests of classified documents . . ."  Supp. Decl. ¶ 20.  The declarations describe the 16 FOIA queues in more detail, noting that they consist of one "multi-request" queue for records subject to multiple requests, and five queues divided by the type of media requested (textual, electronic, etc.).  Id.  The five media-based queues are each subdivided into large, medium, and small requests, making for a total of 15 media-based queues.  Id.  Further, Ms. Robison makes clear that "[w]ithin each queue, the FOIA cases are organized by date received."  Supp. Decl. ¶ 20.

Plaintiff's primary objection to the Library's queue system appears to be that there are multiple tracks, rather than a single track.  Plaintiff notes the possibility that with multiple tracks, one track may, at any given point, move faster than, or have fewer requests than, the others.  Or that certain requests in "longer" queues may lose "substantial ground" as other queues are processed.  As stated above, plaintiff's FOIA request has substantially benefitted by being placed in the multi-request queue.  Accordingly, it may not complain about the queue structure or the diligence the Library has shown in processing FOIA requests.  Nonetheless, the multi-track approach to FOIA processing has been utilized by several agencies, and has been upheld by the courts in this Circuit as a fair and orderly system.  See, e.g., Open America, 547 F.2d at 614 ("There is no allegation by plaintiffs that the FBI procedure, treating each request on a first-in, first-out basis *after initially separating the requests into the simple and the difficult tasks for appropriate processing*, is anything but fair, orderly, and the most efficient procedure which can be adopted under the circumstances") (emphasis added); Elect. Frontier Found., 517 F. Supp.2d at 115 & n.6 ("Requests [made to the FBI] are placed in one of three queues, based on the total

---

[3]    Nor may Judicial Watch therefore complain about its request being placed in the complex electronic unclassified queue initially.  Pl's Opp'n at 5.  Having been moved to the multi-request queue, Judicial Watch's request benefitted from the efficiencies of multi-request processing.

amount of material responsive to the request, and are assigned to one of the Disclosure Units . . . based on the date of their arrival within the appropriate queue."); Ctr. for Public Integrity, 2006 WL 1073066 at * 4 ("The Department [of State] processes requests on a first-in, first-out basis, with two tracks-simple/fast and routine/complex."); Appleton, 254 F. Supp. 2d at 9 (finding due diligence by FDA because, *inter alia*, the agency used a multi-track system where part of the requester's request was placed in the "'complex' track, which operates on a first-in, first-out basis").

The principle on which plaintiff objects – that some queues may move faster than others – is prevalent in any system that has more than one queue. Indeed, it appears that the problem of which plaintiff complains has no outer limit, because even where there is a single track, if there are multiple FOIA processors and more than one FOIA request is being processed at any given time, there will undoubtedly be instances in which an easier request that was filed after a more complex one would be released first. Plaintiff certainly provides no support for any proposition that an agency's most-efficient use of resources defeats a claim of due diligence. As both a practical and a legal matter, having a complex track, first-in, first-out system does not defeat the due diligence with which the Library has been proceeding.

Finally, plaintiff argues that the Library is "falling further behind as its backlog is increasing," pointing to the increase in the number of pending requests. Pls. Opp'n at 11. That increase, however, is not a function of a lack of diligence by the Library, but a function of the unanticipated number and complexity of the FOIA requests actually received. As was noted by the court in Center for Public Integrity,

> To the extent that an agency is unable to reduce its backlog due to an unpredictable increase in the number of FOIA requests, the 1996 amendments do not disqualify an agency from an Open America stay of proceedings. This is because the amendments link the requirement to demonstrate 'reasonable progress' to those cases where an agency claims exceptional circumstances based on 'predictable agency workload.' The legislative history contemplates that where an agency faces an 'unforeseen' increase in FOIA requests and the request for a stay is not based on a 'routine backlog,' a stay may be justified notwithstanding the lack of a reduction of the backlog.

Ctr. for Public Integrity, 2006 WL 1073066 at *4. In short, the number of FOIA requests

received by the Library has not remained constant, and the short-staffed library has been laboring to process the pending – and continuing influx of – requests.  Pointing to a snapshot statistic showing an increase in the number of requests does not undermine the Library's reasonable progress in reducing the "backlog" of requests.  To be sure, "'[r]easonable progress,' [ ] does not require that annual backlog reductions be uniform," and in fact the court in Appleton granted the agency a stay under Open America in spite of actual increases in the agency's FOIA backlog.  Appleton, 254 F. Supp. 2d at 10 & n.4.

The Library is still in its relative infancy in processing FOIA requests and in refining its processing methods to release records rapidly to the public.  However, by its early efforts in training staff, organizing files, and systematically processing records, as well as adding a multi-request queue, conducting studies of faster FOIA processing, and requesting additional resources for FOIA processing, the Library has demonstrated the due diligence adequate to justify a stay of the proceedings.

*   *   *

In sum, defendant has established that it has worked with due diligence to process the many FOIA requests in its queue and to reduce the backlog of requests, despite the extraordinary circumstances that the Library has faced.  As noted in defendant's opening brief, courts have routinely granted stays in similar situations, and have granted stays of one year or more with the opportunity and expectation that additional time may be sought after that.  Accordingly, defendant respectfully requests that an Order be issued staying the pending proceeding for one year (with an opportunity at that point to seek additional time as needed to complete the processing), in order for the Library to begin processing the remaining telephone log books portion of the request.

## **CONCLUSION**

For all of the reasons noted above, defendant respectfully requests that an Order be issued staying the pending proceeding in the manner described above.

Respectfully submitted this 19th day of March, 2008.

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

OF COUNSEL
JASON R. BARON
(DC Bar No. 366663)
Director of Litigation
Office of the General Counsel
NARA
8601 Adelphi Road, Suite 3110
College Park, MD 20740
Telephone: (301) 837-1499
Fax: (301) 837-0293
jason.baron@nara.gov

/s/ Helen H. Hong
HELEN H. HONG
Trial Attorney, Federal Programs Branch
U.S. Department of Justice, Civil Division
Tel: (202) 514-5838
Fax: (202) 616-8460
helen.hong@usdoj.gov
Courier Address:
20 Massachusetts Ave., NW, Rm. 6132
Washington, D.C. 20530

Counsel for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 19, 2008, a true and correct copy of the foregoing

Defendant's Reply in Support of Open America Stay was served electronically by the U.S.

District Court for the District of Columbia Electronic Document Filing System (ECF) and that

the documents are available on the ECF system.


/s/ Helen H. Hong_____
HELEN H. HONG

# EXHIBIT 1

First Lady Hillary Rodham Clinton's Schedules Open on March 19          file:///C:/Documents%20and%20Settings/hhong/Local%20Settings/...

Case 1:07-cv-01267-JR          Document 19-2          Filed 03/19/2008          Page 2 of 3

PRESS INFORMATION
**Press Releases**
**Press Kits**
**About Us**

ADDITIONAL RESOURCES
**The Charters of Freedom**
**America's Historical Documents**
**The National Archives Experience**
*Prologue* Magazine
**Featured Documents**
**Online Exhibit Hall**
**Online Databases**
**Speeches and Writings by the Archivist**
**Calendar of Events**

**Learn why Democracy Starts Here**

**Go to the Press/Journalists Main Page**

Print Page          E-mail Page          Bookmark Page

## Press Release
## March 18, 2008

# First Lady Hillary Rodham Clinton's Schedules Open on March 19

**WHAT:** The William J. Clinton Presidential Library and the National Archives will open 11,046 pages of First Lady Hillary Rodham Clinton's White House schedules. These Presidential records will be made available in the Clinton Library research room and to the press on CDs on the day of the opening. These records will also be posted on the Clinton Library website http://www.clintonlibrary.gov as soon as possible.

---
**More Information**

**Clinton Library main page**
---

These schedules are from the First Lady's Staff files of Patti Solis Doyle, Special Assistant to the President and Director of Scheduling for the First Lady. Doyle was responsible for the First Lady's schedule from 1993 to 1998, and then assumed additional responsibilities as Director of Advance for the First Lady throughout the rest of the Clinton Administration. Arranged chronologically, these records document in detail the activities of the First Lady, including meetings, trips, speaking engagements and social activities for the eight years of the Clinton Administration.

This file series includes schedules for 2,888 days. Clinton Library archivists processing these records subsequently determined that schedules for 32 days were not included in this series; however, schedules for 27 of those days have now been located, and will be processed as soon as possible.

Of the 11,046 pages of schedules that are being opened, 4,746 have redactions. The majority of the redactions pertain to the privacy interests of third parties, including their social security numbers, telephone numbers, and home addresses. In addition, schedules for the first 19 days in January 1993, prior to the inauguration of President Clinton and prior to Mrs. Clinton's tenure as First Lady, have been closed in full in accordance with the Presidential Records Act. Researchers will find occasional unusual text formatting and in some cases final schedules as well as "revised final" schedules. Specific dates can be viewed on the CD by selecting view and bookmark on your Adobe toolbar.

**WHEN:**
9:00 AM CST/10:00 AM EST
Wednesday March 19, 2008

**WHERE:**
The CDs and a finding aid will be available **simultaneously** at:

- Clinton Presidential Library, 1200 President Clinton Avenue, Little Rock, AR (Textual copies of the schedules will also be available for review in the Clinton Library research room.)
- National Archives Building, 700 Pennsylvania Avenue, NW, Washington, DC

**Please note: The National Archives will issue only one CD per organization.**
A finding aid of these materials will also be available on the Clinton Library website http://www.clintonlibrary.gov/textual-foia.html#0198.

**BACKGROUND:**
The Clinton Presidential Library is one of 12 Presidential libraries administered by the National Archives. The requirements for review and release of Presidential records are established by the Presidential Records Act of 1978 and Executive Order 13233. This process is very labor-intensive and time-consuming and requires that National Archives staff conduct a page

Archives.gov Home     Contact Us     Privacy Policy     Accessibility     Freedom of Information Act     No FEAR Act                    Top of Page

by page, word for word review of all records in order to protect sensitive information such as national security, personal privacy and law enforcement. Following the National Archives review, by law, both the former and the incumbent Presidents or their designated representative must have an opportunity to review all of the records, in order to consider if any of them may be subject to a constitutionally-based privilege.

# # #

For press information, contact the National Archives Public Affairs staff at 202-357-5300.

08-81